1  MICHAEL H. PEARSON, CA SBN 277857
   *mpearson@pwfirm.com*
2  **PEARSON WARSHAW, LLP**
   15165 Ventura Blvd., Suite 400
3  Sherman Oaks, CA 91403
   Telephone: (818) 788-8300
4  Facsimile: (818) 788-8104

5  *Attorneys for Plaintiffs and the Putative Classes*

6  [Additional counsel listed on signature page]

7

8           **UNITED STATES DISTRICT COURT**
9          **NORTHERN DISTRICT OF CALIFORNIA**

10 | SARAHA MACK and YAJAIRA SOLANO,    | CASE NO.
11 | individually and on behalf of all others similarly
   | situated,                          | **JURY TRIAL DEMANDED**
12 |                                    |
   |        Plaintiffs,                 | **CLASS ACTION COMPLAINT**
13 |
   |        v.
14 |
15 | EDGEWELL PERSONAL CARE COMPANY,
   |
16 |        Defendant.

17

18              **CLASS ACTION COMPLAINT**

19        Plaintiffs Saraha Mack and Yajaira Solano ("Plaintiffs") individually, and on behalf of all

20 others similarly situated, bring this Class Action Complaint against Defendant Edgewell Personal

21 Care Company ("Edgewell" or "Defendant") and allege the following based upon personal

22 knowledge as to themselves and, as to all other matters upon information and belief, including

23 investigation conducted by their attorneys.

24              **NATURE OF THE CASE**

25        1.      This is a civil class action brought by Plaintiffs on behalf of consumers who purchased

26 Playtex-branded Gentle Glide Tampons ("Tampon Products" or "Products") for personal hygiene

27 purposes.

28

2.    Approximately 5.8 billion tampons were sold in the United States in 2018.[1] In 2020 alone, 34.1 million women in the United States used tampons to manage their menstruation.[2]

3.    In recent years there has been increased concern from women about the presence of chemicals in menstrual products and how these chemicals might affect long-term health.[3] These concerns arise, in part, from the fact that the vagina and vulva absorb chemicals at a higher rate than other areas of the body.[4] Accordingly, consumers have begun to demand eco-friendly, natural, and chemical-free methods of managing menstruation.

4.    As one of the biggest players in the very lucrative feminine hygiene market, Edgewell is keenly aware of increased consumer demand for products which limit unnecessary chemical exposure. In order to capitalize on this demand, Edgewell designs, manufactures, advertises, distributes, and sells personal care products, including the Tampon Products that are the subject of this Action.

5.    Defendant knows that when it comes to product labeling, words matter. Product label real estate is limited, and Defendant has carefully and intentionally chosen certain words on the Tampon Product labels to convince consumers that the Tampon Products are free of artificial or potentially harmful chemicals and are therefore environmentally friendly, clean, healthy, and safe.

6.    Defendant has intentionally designed the front and back label representations on the Tampon Products, beginning with the name "Playtex SIMPLY gentle glide," with the "SIMPLY" in all capital letters and emphasized in green text on the front product label, along with "SIMPLE. GENTLE. RELIABLE" in green text on the back label with a green circle with leaves surrounding the text, in addition to representations that the Tampon Products contain "purified fibers," "free from

---

[1] https://www.nationalgeographic.com/environment/article/how-tampons-pads-became-unsustainable-story-of-plastic (last accessed Feb. 20, 2023).

[2] https://www.statista.com/statistics/278085/us-households-usage-of-tampons/ (last accessed Feb. 15, 2023).

[3] *See* https://www.theguardian.com/commentisfree/2015/apr/20/tampon-safety-research-legislation (last accessed Feb. 20, 2023).

[4] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3948026/ (last accessed Feb. 20, 2023).

colors, dyes and BPA," which are known chemicals of concern, and an assurance that "Every ingredient used in Simply Gentle Glide is rigorously evaluated to provide reliable protection that you can trust to be gentle and safe for your body" (collectively the "Safe, Gentle, and Purified" Representations), in order to lead reasonable consumers to believe that the Tampon Products do not contain any potentially harmful chemicals:

 

7.    With the Safe, Gentle and Purified Representations, Defendant intentionally and knowingly leads consumers to believe that the Tampon Products do not contain any potentially harmful chemicals, like PFAS.[5]

8.    Reasonable consumers, therefore, fairly and reasonably understand that a product marketed with the Safe, Gentle and Purified Representations would not contain chemicals known to be harmful to humans or the environment.

---

[5] https://www.playtextampons.com/products/simply-gentle-glide-tampons (last accessed Feb. 15, 2023).

9.      In fact, consumers rely on Playtex's representations about the Tampon Products to such an extent that the Tampons were voted Product of the Year in 2019 by the Consumer Survey of Product Innovation.[6]

10.     Edgewell knows that consumers are concerned with the ingredients in their personal care products, especially products like tampons that are designed to be used internally. Thus, Edgewell has intentionally utilized its marketing, centering on its Safe, Gentle and Purified Representations to drive sales and increase profits, including by targeting health-conscious consumers who reasonably believe that the Tampon Products are free from harmful chemicals.

11.     However, despite Edgewell's consistent and pervasive marketing of the Tampon Products as Safe, Gentle and Purified, Plaintiffs' independent testing has shown that the Tampon Products contain per- and polyfluoroalkyl substances ("PFAS"), a category of human-made chemicals with a toxic, persistent, and bioaccumulative nature which are associated with numerous health concerns.

12.     The presence of PFAS chemicals in the Tampon Products is entirely inconsistent with Edgewell's uniform Safe, Gentle and Purified Representations.

13.     As a result of Edgewell's misconduct, Plaintiffs and Class Members have suffered injury in fact in the form of economic damages.

14.     Plaintiffs bring this suit to halt Edgewell's dissemination of false and misleading representations and to correct the false and misleading perceptions that Edgewell's representations have created in the minds of reasonable consumers.

15.     Plaintiffs seek damages, injunctive relief, and other equitable remedies for themselves and for the proposed classes.

---

[6] https://www.amazon.com/Playtex-Tampons-Protection-Multi-Pack-Unscented/dp/B00J2L9IGA/ref=sr_1_1?crid=2AVTBYRYQ1FWE&keywords=playtex+simply+gentle+glide&qid=1676400805&sprefix=playtex+simply+gentle+glid%2Caps%2C61&sr=8-1 (last accessed Feb. 14, 2023).

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendant because Defendant has intentionally availed itself of the laws of the United States and the state of California, having purposefully marketed, advertised and/or sold the Tampon Products to consumers across the United States, including the state of California. Such conduct has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including the state of California.

18.     In accordance with 28 U.S.C. § 1391 and the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1780(d), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

**DIVISIONAL ASSIGNMENT**

19.     Plaintiffs purchased the Tampon Products in Fairfield, California and San Leandro, California. Accordingly, pursuant to Civil Local Rule 3-2(d), this action can be assigned to the Oakland Division or San Francisco Division.

**PARTIES**

20.     Plaintiff Saraha Mack is a resident and citizen of the state of California and resides in Fairfield, California.

21.     Plaintiff Yajaira Solano is a resident and citizen of the state of California and resides in Oxnard, California.

22.     Defendant Edgewell is incorporated in Missouri and its principal place of business is located at 6 Research Drive, Shelton, CT 06484.

## FACTUAL ALLEGATIONS

23.     Tampons are a method of absorbing menstrual flow that are worn internally by inserting them into the vagina.[7]

24.     The first commercial tampon was introduced in the United States in the 1930s.[8]

25.     Playtex is an established tampon manufacturer and innovator, having introduced the first "plastic, dome-tipped applicator in 1973."[9]

26.     Thus, Playtex is indisputably one of the most well recognized—and highly trusted—brands of feminine hygiene products currently on the market.

27.     Edgewell acquired Playtex in 2007 and has since built a large portfolio of other feminine care brands as well.[10]

28.     Edgewell is "one of the world's largest manufacturers and marketers of personal care products in the wet shave, sun and skin care, and feminine care categories. With operations in over 20 countries, our products are widely available in more than 50 countries."[11]

29.     In fact, Edgewell was named one of Newsweek's "America's Most Responsible Companies in 2023,"[12] further cementing its status as a trusted source for consumers.

30.     Despite their widespread use, health concerns about feminine hygiene products date back to the 1980s, when tampons were first linked to toxic shock syndrome, a potentially life-

---

[7] https://www.fda.gov/consumers/consumer-updates/facts-tampons-and-how-use-them-safely (last accessed Feb. 15, 2023).

[8] https://www.theatlantic.com/health/archive/2015/06/history-of-the-tampon/394334/ (last accessed Feb. 2, 2023).

[9] *Id.*

[10] https://ir.edgewell.com/~/media/Files/E/EdgeWell-IR/annual-reports/epc-10k-9-30-22-48.pdf (last accessed Feb. 21, 2023).

[11] *Id.*

[12] https://www.prnewswire.com/news-releases/edgewell-personal-care-named-one-of-americas-most-responsible-companies-in-2023-301697589.html (last accessed Jan. 18, 2023).

threatening condition.[13] From the time toxic shock syndrome was first linked to tampons, and continuing to the present time, Edgewell has continuously worked to reassure consumers about the safety of its products.

31.    Currently, there is significant public health concern about the chemicals used in feminine hygiene products.[14] Potential negative health effects stemming from the chemicals in tampons and pads, in addition to environmental concerns related to single-use plastics, have caused many women to seek out alternative menstrual hygiene products, including those that limit their exposure to unnecessary and potentially harmful chemicals and reduce plastic waste. In the past decade, in response to consumer demand, various new brands have begun to offer menstrual products which are marketed as more ethical and ecologically friendly than traditional feminine hygiene brands.[15]

32.    As an undisputed leader in the menstrual products market, Edgewell is well aware that consumers are looking for eco-friendly and healthy ways to deal with menstruation.

33.    Edgewell currently sells Playtex tampons, including the Gentle Glide tampons, in retail stores throughout the country, including at drug and grocery stores such as Walgreens, CVS, Target, Kroger, and Walmart.

***Defendant's False and Deceptive Advertising***

34.    Edgewell uniformly represents the Tampon Products as Safe, Gentle and Purified in accordance with representations on both the front and back of the Tampon Product packaging, where they cannot be missed by consumers.

35.    Nowhere on the Tampon Products' packaging does Edgewell disclose the presence of PFAS.

---

[13] https://my.clevelandclinic.org/health/diseases/15437-toxic-shock-syndrome (last accessed Feb. 15, 2023).

[14] https://www.womensvoices.org/2018/06/05/new-tampon-testing-reveals-undisclosed-carcinogens-and-reproductive-toxins/ (last accessed Feb. 20, 2023).

[15] https://www.theguardian.com/society/2020/feb/11/tampon-wars-the-battle-to-overthrow-the-tampax-empire (last accessed Feb. 20, 2023).

36.     The Safe, Gentle and Purified Representations appear prominently on the Tampon Products' front label, which is adorned with illustrations of green leaves to match the green in the all-capitalized "SIMPLY," and representations that the Tampon Products consist of purified fibers which are free of chemicals of concern such as colors, dyes, and BPA[16]:



37.     Likewise, the back label of the Tampon Products[17] contains the Safe, Gentle and Purified Representations, which are further bolstered by the inclusion of the phrase "Simple. Gentle. Reliable" in green text in a green circle containing leaves, as well as reiteration that the Tampon Product consists of purified fibers and is free from colors, dyes, and BPA. Additionally, the packaging

[16] https://www.playtextampons.com/products/simply-gentle-glide-tampons (last accessed Feb. 15, 2023).

[17] Id.

indicates that "Every ingredient used in Simply Gentle Glide™ is rigorously evaluated to provide reliable protection that you can trust to be gentle and safe for your body":



CLASS ACTION COMPLAINT

1      38.    The packaging's side panel contains similar representations, along with the Tampon

2  Products' ingredients, which are listed as: rayon and/or cotton fiber, polyester, polysorbate 20, wax

3  blend (paraffin, butyl sherate, and carnuba wax) and polymer wax dispersion.[18]



39.     In fact, Edgewell uses its official website to uniformly reassure consumers that the Tampon Products are "Made Simple - 360° simple, reliable protection and comfortable applicator made with no unnecessary ingredients" and "with Simply GentleGlide™, you can have the best of both worlds – it's simple and a great value!"[19]

40.     Because Edgewell knows that safety is material to consumers—especially when using a product that is designed to be used internally in the body—the Playtex website explicitly addresses consumer concerns about toxic chemicals in tampons and makes absolutely clear that all Playtex products are free of any harmful materials[20]:

**Q:** I read on the Internet that there are all kinds of toxic chemicals in tampons. Is that true?
**A:** We all know how easy it is for the wrong information to get passed on the Internet. However, there are government organizations like Health Canada that have strict requirements for the production of tampons to make sure they are free from any harmful materials.

41.     Edgewell has consistently positioned the Playtex brand as a safe, trusted brand, having trademarked the slogan "Made Better Every Day™…Playtex—since 1960."[21]

42.     Thus, there can be no doubt that the Safe, Gentle and Purified Representations are intentionally designed to convince reasonable consumers that the Tampon Products are, in fact, Safe, Gentle and Purified and otherwise free from potentially harmful ingredients.

43.     The Safe, Gentle and Purified Representations are central to Edgewell's marketing and sale of the Tampon Products and are strategically employed to convince health-conscious consumers that the Tampon Products are a pure and safe choice.

***PFAS and Associated Risks***

44.     PFAS are a category of highly persistent and potentially harmful man-made chemicals.[22]

---

[19] https://www.playtextampons.com/products/simply-gentle-glide-tampons (last accessed Feb. 15, 2023).

[20] https://www.playtextampons.com/faqs/tampon-myths (last accessed Feb. 15, 2023).

[21] https://edgewell.com/pages/our-brands (last accessed Feb. 15, 2023).

[22] https://www.epa.gov/pfas/pfas-explained (last accessed Feb. 20, 2023).

45.     PFAS are not naturally occurring.[23] They are man-made and have been used in various products since the 1940s.[24] Thus, they are indisputably synthetic chemicals.

46.     To date, scientists have identified at least 12,000 types of PFAS chemicals.[25]

47.     While there are thousands of varieties of PFAS chemicals in existence, all PFAS contain carbon-fluorine bonds—one of the strongest in nature—which makes them highly persistent in the environment and in human bodies.[26]

48.     PFAS chemicals are sometimes called "forever chemicals."

49.     Humans can be exposed to PFAS through a variety of ways, including skin absorption.[27]

50.     PFAS chemicals have been associated with a variety of negative health effects for humans and the environment. The health risks associated with PFAS include, but are not limited to, decreased male and female fertility, negative developmental effects or delays in children, increased risk of cancers, liver damage, and thyroid disease, adverse impacts on the immune system, interference with hormones and increased cholesterol levels.[28]

51.     It is well documented that PFAS in personal care products may pose a risk to human health through direct and indirect exposure, as well as a risk to ecosystem health throughout the lifecycle of these products.[29]

---

[23] https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html (last accessed Feb. 20, 2023).

[24] https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed Feb. 20, 2023).

[25] https://comptox.epa.gov/dashboard/chemical-lists/pfasmaster (last accessed Feb. 20, 2023).

[26] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (last accessed Feb. 20, 2023).

[27] *Id.*

[28] *See* https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last accessed February 20, 2023); https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed Feb. 20, 2023); https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html (last accessed Feb. 20, 2023).

[29] https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240 (last accessed Feb. 21, 2023).

52.     As skin is the body's largest organ,[30] subjecting it to absorption of PFAS through tampons is very concerning.

53.     A large number of studies have examined the potential harmful health effects of exposure to PFAS. In a 2019 study, the U.S. Department of Health and Human Services' National Toxicology Program found that PFAS has adverse effects on human organ systems, including impacting the liver and thyroid hormone.[31]

54.     A figure from the European Environmental Agency ("EEA") shows the "[e]ffects of PFAS on human health:"[32]



55.     The EEA has further explained that "[p]eople most at risk of adverse health impacts are those exposed to high levels of PFAS, and vulnerable population groups such as children and the

---

[30] https://doi.org/10.3109/17453054.2010.525439 (last accessed Feb. 20, 2023).

[31] https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (last accessed Feb. 20, 2023).

[32] https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe (last accessed Feb. 21, 2023).

CLASS ACTION COMPLAINT

elderly."[33]

56.     The Center for Disease Control's Agency for Toxic Substances and Disease Registry has recognized that exposure to high levels of PFAS may also impact the immune system and reduce antibody responses to vaccines.[34]

57.     On September 20, 2020, a New York Times article titled "These Everyday Toxins May Be Hurting Pregnant Women and Their Babies" reported on the dangers of PFAS—particularly during gestation and in early childhood development:[35]

> Scientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.
>
> More disturbing, PFAS can also alter levels of both mothers' and babies' thyroid hormones, which oversee brain development, growth and metabolism, and also play a role in immunity. Prenatal PFAS exposures that disrupt metabolism and immunity may cause immediate and lasting effects on both mother and child. Women exposed to PFAS during pregnancy have higher risks of gestational diabetes and pre-eclampsia, a type of high blood pressure. Their babies are more likely to undergo abnormal growth in utero, leading to low birth weight, and later face increased risk of childhood obesity and infections.

58.     Costs to society arising from PFAS exposure are high, with the annual health-related costs estimated to be EUR 52-84 billion across Europe in a recent study (Nordic Council of Ministers, 2019).[36] The study notes that these costs are likely underestimated, as only a limited range of health

---

[33] *Id.*

[34] https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed Feb. 20, 2023).

[35] https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html (last accessed Feb. 20, 2023).

[36] https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe (last accessed Feb. 21, 2023).

1  effects (high cholesterol, decreased immune system and cancer) linked to exposure to a few specific
2  PFAS were included in the estimates.[37]

3  59.  There is no treatment to remove PFAS from the body. Due to its bioaccumulative
4  nature, experts agree the most effective strategy to decrease risk is to avoid and/or limit exposure to
5  products known to contain PFAS. As noted by the EPA: "Because certain PFAS are known to cause
6  risks to human health, [one of] the most important steps you and your family can take to protect your
7  health is to understand how to limit your exposure to PFAS by . . . taking [steps to] reduce possible
8  exposure during daily activities."[38]

9  60.  The exposure to toxic substances such as PFAS through period care products is
10  particularly serious due to the fact that studies have shown that the vaginal ecosystem is more
11  sensitive and absorbent than typical skin.[39]

12  61.  Further, "[r]esearch on vaginal drug delivery has shown that the vaginal canal offers a
13  suitable environment for chemical absorption and circulation. The canal is rich in arteries and
14  lymphatic vessels. And vaginal mucus is sticky, so it holds some molecules against the vaginal wall
15  for a long time; this forced proximity can stimulate absorption."[40]

16  62.  "The Madrid Statement," a scientific consensus regarding the persistence and potential
17  for harm of PFAS substances issued by the Green Science Policy Institute and signed by more than
18  250 scientists from 38 countries, recommended actions in order to mitigate future harm, including:
19  (1) discontinuing use of PFAS where not essential or safer alternatives exist; (2) labeling products

---

[37] *Id.*

[38] https://www.epa.gov/pfas/meaningful-and-achievable-steps-you-can-take-reduce-your-risk (last accessed Feb. 20, 2023).

[39] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3948026// (last accessed Feb. 21, 2023).

[40]  https://undark.org/2022/11/15/in-turmoil-over-tampons-scientists-see-a-need-for-more-scrutiny/ (last accessed Feb. 20, 2023).

containing PFAS; and (3) encouraging retailers and individual consumers to avoid products containing or manufactured using PFAS whenever possible.[41]

***Plaintiffs' Independent Testing Confirms the Presence of PFAS Chemicals in the Tampon Products***

63.    Plaintiffs sought independent third-party testing to determine whether the Tampon Products contain PFAS chemicals.

64.    Plaintiffs' independent testing was conducted in accordance with accepted industry standards for detecting whether the Tampon Products contain organic fluorine, which is a surrogate for PFAS chemicals.

65.    There are more than 12,000 PFAS chemicals currently in existence.[42] Accordingly, it is impractical, if not impossible, for scientists and researchers to test for the presence of each of these 12,000 chemicals in any particular sample.

66.    The presence of organic fluorine in a sample, however, indicates the sample contains PFAS, and is therefore a widely accepted method of determining whether a sample contains PFAS.

67.    Here, Plaintiffs' testing detected the presence of organic fluorine in the Tampon Products.

***Defendant's Unlawful Conduct***

68.    Edgewell is well aware of consumers' concern with the safety of tampon usage[43] as well their desire to avoid potentially harmful chemicals, which is exactly why it has engaged in an aggressive, uniform marketing campaign intended to convince consumers that the Tampon Products are a Safe, Gentle and Purified alternative to traditional menstrual products that are free from potentially harmful ingredients like PFAS.

---

[41] https://greensciencepolicy.org/our-work/science-policy/madrid-statement/ (last accessed Feb. 20, 2023).

[42] https://comptox.epa.gov/dashboard/chemical-lists/pfasmaster (last accessed Feb. 15, 2023).

[43] https://www.playtextampons.com/faqs/tss-information (last accessed Feb. 14, 2023).

69.     Edgewell has engaged in this uniform marketing campaign in an effort to convince reasonable consumers to believe that the Tampon Products are superior to other tampons or menstrual products that do not have the same purported simple, purified, or chemical-free health benefits.

70.     Reasonable consumers purchasing the Tampon Products would believe, based on Edgewell's representations, that the Tampon Products do not contain artificial, synthetic or man-made chemicals that could adversely impact their health.

71.     At all times relevant to this action, Defendant knew, or at minimum should have known, that its Tampon Products contain PFAS.

72.     Throughout the class period, Defendant has targeted health-conscious consumers by falsely and misleadingly representing its Tampon Products using the Safe, Gentle and Purified Representations, and consequently, reasonable consumers believe the Tampon Products are free from harmful chemicals such as PFAS.

73.     Defendant is well-aware that consumers are increasingly demanding menstrual products that are free from ingredients that may be harmful to their health and that otherwise support their wellness goals—specifically, harmful chemicals. In its own words: "Every ingredient used in Playtex Simply Gentle Glide is **rigorously evaluated** to provide reliable protection that you can trust to be gentle and **safe for your body**."[44] In further assurance to consumers, Defendant identifies on a section of its website under "Tampon Myths," Defendant specifically addresses whether it is true that there are "toxic chemicals in its tampons."[45] Defendant prefaces its response by saying "We all know how easy it is for the wrong information to get passed on the internet" and represents without qualification that its tampons "Are free from any harmful materials."[46] Responding to the concern that tampons contain toxic chemicals in a "frequently asked questions" section of its website makes plain that Defendant knows the significance of consumer concerns over toxic chemicals in tampons.

---

[44] https://www.playtextampons.com/products/simply-gentle-glide-tampons (last accessed Feb. 15, 2023) (emphasis added).

[45] https://www.playtextampons.com/faqs/tampon-myths (last accessed Feb. 15, 2023).

[46] *Id.*

74.     Over the course of six decades, Playtex has cultivated a trustworthy brand image pertaining specifically to feminine hygiene products and is regarded as one of the "'big three' tampon brands."[47]

75.     Defendant's wellness-focused business strategy is supported by current market research, which has shown an increased demand for more sustainable and environmentally friendly menstrual products, as well as those that do not contain potentially harmful chemicals.[48]

76.     Therefore, current research demonstrates, and Defendant's marketing strategy supports, that the presence of harmful chemicals in menstrual products is material to reasonable consumers.

77.     Defendant's strategy to stay aligned with consumer preferences in order to retain a competitive advantage in the marketplace, which includes representing to sell Safe, Gentle and Purified tampons which do not contain ingredients that are suspected to cause harm to human health and the environment, would inevitably be negatively impacted if it disclosed the presence of PFAS in the Tampon Products.

78.     Further, Defendant's claims touting its Tampon Product as Safe, Gentle and Purified, and other representations and omissions as described herein, further contribute to the reasonable consumer perception and belief that the Tampon Products contain only ingredients that are good for humans and the environment, and that they are free of man-made chemicals indisputably linked to negative health effects.

79.     Consumers lack the expertise to ascertain the true ingredients in the Tampon Products prior to purchase. Accordingly, reasonable consumers must, and do, rely on Defendant to accurately and honestly advertise the Tampon Products' ingredients and benefits. Further, consumers rely on Defendant to not contradict those representations by using artificial man-made chemicals in its

---

[47] https://www.theatlantic.com/health/archive/2015/06/history-of-the-tampon/394334/ (last accessed Feb. 2, 2023).

[48] https://www.factmr.com/report/415/feminine-hygiene-products-market (last accessed Feb. 14, 2023).

Tampon Products that are known to pose a risk to human health. Such misrepresentations are material to reasonable consumers' purchasing decisions.

80.    Defendant's representations that the Tampon Products are healthy for humans, including *inter alia*, the representations described herein, are false because products containing toxic, man-made ingredients like PFAS are neither good for consumers nor the environment.

81.    Defendant's representations are likely to mislead reasonable consumers, and indeed did mislead Plaintiffs and Class members, regarding the presence of PFAS chemicals in its Tampon Products. Accordingly, these acts and practices by Defendant are deceptive.

82.    Consumers reasonably relied on Defendant's false statements and misleading representations, and reasonably expected that Defendant's Tampon Products would conform with its representations and, as such, would not contain artificial, man-made PFAS chemicals.

83.    Defendant's false statements, misleading representations and material omissions are intentional, or otherwise entirely careless, and render its Tampon Products worthless or less valuable.

84.    If Defendant had disclosed to Plaintiffs and Class Members that its Tampon Products contained PFAS chemicals, Plaintiffs and Class Members would not have purchased Defendant's Tampon Products, or they would have paid less for them.

85.    Plaintiffs and Class Members were among the intended recipients of Defendant's deceptive representations and omissions described herein.

86.    Defendant's representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

87.    The materiality of the representations and omissions described herein also establishes causation between Defendant's conduct and the injuries Plaintiffs and Class Members sustained.

88.    Defendant is aware that the consumers are concerned about the use of PFAS in its Tampon Products, yet it has continued to market and advertise its Tampon Products using the Safe, Gentle and Purified Representations and other representations described herein in order to profit off of unsuspecting consumers, including Plaintiffs and Class Members.

89.     The presence of PFAS chemicals in Defendant's Tampon Products is entirely inconsistent with its uniform representations.

90.     Defendant's knowingly false and misleading representations have the intended result of convincing reasonable consumers that its Tampon Products are Safe, Gentle and Purified and therefore do not contain artificial, man-made, toxic chemicals. No reasonable consumer would consider Defendant's Tampon Products Safe, Gentle and Purified, or good for people and the environment, if they knew that the Tampon Products contained harmful, artificial PFAS chemicals.

91.     Defendant's false, misleading, and deceptive representations, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public. Indeed, they have already deceived and misled Plaintiffs and Class Members.

92.     In making the false, misleading, and deceptive representations, Defendant knew and intended that consumers would pay a premium for the Tampon Products over comparable products that are made from or contain synthetic or artificial chemical ingredients that are known to be harmful to humans and the environment.

93.     Plaintiffs and Class Members all paid money for the Tampon Products; however, they did not obtain the full value of the advertised Tampon Products due to Defendant's misrepresentations as detailed herein. Plaintiffs and Class Members purchased, purchased more of, or paid more for, the Tampon Products than they would have had they known the truth about the Tampon Products' artificial, man-made, and harmful ingredients. Thus, Plaintiffs and Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

94.     Defendant's widespread marketing campaign portraying the Tampon Products as containing Safe, Gentle and Purified ingredients as detailed herein, is misleading and deceptive to consumers because the Tampon Products are made with artificial, man-made, and toxic ingredients. Plaintiffs bring this action on behalf of the proposed Classes to stop Defendant's misleading practices.

## PLAINTIFFS' FACTS

*Plaintiff Mack's Facts*

95.     Plaintiff Saraha Mack purchased Playtex brand tampons for nearly thirty years. She most recently purchased the Tampon Products in January 2023, from Walmart in Fairfield, California.

96.     At the time she purchased the Tampon Products, Plaintiff Mack was specifically seeking out chemical-free personal care products, including chemical-free feminine hygiene products.

97.     Prior to her purchase, Plaintiff Mack reviewed the Tampon Products' labeling, packaging, and marketing materials, including the Safe, Gentle and Purified Representations on the Tampon Products' package.

98.     Plaintiff Mack reasonably understood Defendant's Safe, Gentle and Purified Representations to mean that the Tampon Products would not contain harmful chemicals, especially chemicals that could pose a risk to her health and the environment, like PFAS.

99.     Plaintiff Mack relied on these representations when purchasing the Tampon Products, and these representations were part of the basis of the bargain in that she would not have purchased the Tampon Products, or would not have purchased them on the same terms, if the true facts had been known.

100.     Plaintiff Mack continues to seek out menstrual products that are free from harmful chemicals like PFAS, and she would like to purchase Defendant's Tampon Products in the future if they conform with Defendant's representations about the Tampon Products. However, Plaintiff Mack is currently unable to rely on Defendant's representations regarding its Tampon Products in deciding whether to purchase them in the future. Plaintiff Mack understands that the composition of the Tampon Products may change over time, but as long as Defendant may freely advertise the Tampon Product as Safe, Gentle and Purified when it contains PFAS, Plaintiff Mack will be unable to make informed decisions about whether to purchase Defendant's Tampon Products and will be unable to evaluate the different prices between Defendant's Tampon Products and competitor's products, which *are* in fact free from harmful chemicals like PFAS.

101.    As a direct and proximate result of Defendant's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Mack has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Tampon Products, in addition to the loss of the benefit of her bargain and the Tampon Products' intended benefits.

***Plaintiff Solano's Facts***

102.    Plaintiff Yajaira Solano purchased the Tampon Products most recently in December 2022, from a Walgreens near her home in San Leandro, California.

103.    At the time she purchased the Tampon Products, Plaintiff Solano was specifically seeking out chemical-free personal care products, including chemical-free feminine hygiene products.

104.    Prior to her purchase, Plaintiff Solano reviewed the Tampon Products' labeling, packaging, and marketing materials, including the Safe, Gentle and Purified Representations on the Tampon Products' package.

105.    Plaintiff Solano reasonably understood Defendant's Safe, Gentle and Purified Representations to mean that the Tampon Products would not contain harmful chemicals, especially chemicals that could pose a risk to her health and the environment, like PFAS.

106.    Plaintiff Solano relied on these representations when purchasing the Tampon Products, and these representations were part of the basis of the bargain in that she would not have purchased the Tampon Products, or would not have purchased them on the same terms, if the true facts had been known.

107.    Plaintiff Solano continues to seek out natural menstrual products that are free from harmful chemicals like PFAS, and she would like to purchase Defendant's Tampon Products in the future if they conform with Defendant's representations about the Tampon Products. However, Plaintiff Solano is currently unable to rely on Defendant's representations regarding its Tampon Products in deciding whether to purchase them in the future. Plaintiff Solano understands that the composition of the Tampon Products may change over time, but as long as Defendant may freely advertise the Tampon Product as Safe, Gentle and Purified when it contains PFAS, Plaintiff Solano

will be unable to make informed decisions about whether to purchase Defendant's Tampon Products and will be unable to evaluate the different prices between Defendant's Tampon Products and competitor's products, which *are* in fact free from harmful chemicals like PFAS.

108.    As a direct and proximate result of Defendant's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Solano has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Tampon Products, in addition to the loss of the benefit of her bargain and the Tampon Products' intended benefits.

**INJURY TO THE PUBLIC-AT-LARGE AND POTENTIAL FOR FUTURE HARM**

109.    Defendant's wrongful conduct harms the public-at-large.

110.    PFAS chemicals, also known as "forever chemicals," are a category of highly persistent and toxic man-made chemicals that have been associated with numerous negative health effects for humans.

111.    PFAS chemicals are known to negatively impact the human body, including, but not limited to, decreased fertility, developmental effects or delays in children, increased risk of cancers, liver damage, increased risk of asthma and thyroid disease, adverse impacts on the immune system, interference with hormones and increased cholesterol levels.

112.    PFAS chemicals are further known to negatively impact the environment.

113.    Because Defendant's deceptive advertising is ongoing and directed to the public, and because Defendant continues to sell its Tampon Products containing PFAS chemicals, the deception poses an ongoing risk to the public.

114.    As such, a public injunction must be provided in order to enjoin Defendant's continued harm of consumers and the public-at-large.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

115.    Defendant had actual knowledge, or should have had actual knowledge, that the Tampon Products contained artificial, man-made PFAS chemicals which pose a risk of harm to human health.

116.    Although Defendant was aware of the deception in its advertising, marketing, packaging, and sale of the Tampon Products given the inclusion of PFAS chemicals, it took no steps to disclose to Plaintiffs or Class Members that the Tampon Products contained PFAS chemicals.

117.    Despite its knowledge, Defendant has fraudulently misrepresented the Tampon Products as having qualities and characteristics they do not, while concealing the fact that the Tampon Products contain PFAS chemicals.

118.    Defendant has made, and continues to make, affirmative false statements and misrepresentations to consumers, and continues to omit the fact that the Tampon Products contain PFAS, to promote sales of the Tampon Products.

119.    Defendant has misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiffs and Class Members in deciding whether to purchase the Tampon Products. Defendant's misrepresentations and omissions were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiffs and Class Members. Accordingly, Plaintiffs and Class Members reasonably relied upon Defendant's misrepresentations and concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

120.    The PFAS chemicals in the design and/or manufacture of Defendant's Tampon Products were not reasonably detectible to Plaintiffs and Class Members.

121.    At all times, Defendant actively and intentionally misrepresented the qualities and characteristics of the Tampon Products, while concealing the existence of the PFAS chemicals and failing to inform Plaintiffs or Class Members of the existence of the PFAS chemicals in the Tampon Products. Accordingly, Plaintiffs and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

122.    Defendant's statements, words, and acts were made for the purpose of deceiving the public, and suppressing the truth that the Tampon Products contained artificial, man-made PFAS chemicals.

123.     Defendant misrepresented the Tampon Products and concealed the PFAS chemicals for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

124.     As a result of Defendant's intentional misrepresentations and active concealment of the PFAS chemicals and/or failure to inform Plaintiffs and Class Members of the PFAS chemicals, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendant is estopped from relying on any statutes of limitations in light of its intentional misrepresentations and active concealment of the inclusion of artificial, man-made PFAS chemicals in the Tampon Products.

125.     Further, the causes of action alleged herein did not occur until Plaintiffs and Class Members discovered that the Tampon Products contained PFAS chemicals. Plaintiffs and Class Members had no realistic ability to discern that the Tampon Products contained PFAS chemicals until they learned of the existence of the PFAS chemicals. In either event, Plaintiffs and Class Members were hampered in their ability to discover their causes of action because of Defendant's active concealment of the existence and true nature of the Tampon Products.

## FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS

126.     Although Defendant is in the best position to know what content it placed on its packaging, website(s), and other marketing and advertising during the relevant timeframe, and the knowledge that it had regarding the PFAS chemicals and its failure to disclose the existence of PFAS chemicals in the Tampon Products to Plaintiffs and consumers, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

127.     **WHO**: Defendant made its Safe, Gentle and Purified Representations on the Tampon Products' packaging, online, and its marketing and advertising of the Tampon Products.

128.     **WHAT**: Defendant's conduct here was, and continues to be, deceptive and fraudulent because of its Safe, Gentle and Purified Representations. Thus, Defendant's conduct deceived Plaintiffs and Class Members into believing that the Tampon Products were manufactured and sold with the represented qualities. Defendant knew or should have known this information is material to

reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions, yet it continued to pervasively market the Tampon Products as possessing qualities they do not have.

129.    **WHEN**: Defendant made material misrepresentations, false statements and/or material omissions during the Class periods and at the time Plaintiffs and Class Members purchased the Tampon Products, prior to and at the time Plaintiffs and Class Members made claims after realizing the Tampon Products contained harmful, man-made chemicals, and continuously throughout the applicable Class periods.

130.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through false statements, misrepresentations, and/or omissions on the Tampon Products' packaging.

131.    **HOW**: Defendant made false statements, misrepresentations and/or material omissions regarding the presence of PFAS chemicals in the Tampon Products.

132.    **WHY**: Defendant made the false statements, misrepresentations and/or material omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay for the Tampon Products over other brands that did not make similar Safe, Gentle and Purified Representations, the effect of which was that Defendant profited by selling the Tampon Products to many thousands of consumers.

133.    **INJURY**: Plaintiffs and Class Members purchased, paid a premium, or otherwise paid more for the Tampon Products when they otherwise would not have, absent Defendant's misrepresentations, false and misleading statements.

## CLASS ACTION ALLEGATIONS

134.    Plaintiffs bring this action individually and as representatives of all of those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following proposed nationwide class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the United States within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

135.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the States of California, Florida, Illinois, New York, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, Washington[49] within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

136.    Plaintiffs bring this action individually and as representatives of all of those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following proposed the members of the following class ("California Class"):

> **During the fullest period allowed by law, all persons who purchased the Tampon Products in the State of California within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.**

137.    The Nationwide Class, Multi-State Consumer Protection Class, and California Class are referred to collectively as the "Class" or "Classes," and the members of the Classes are referred to as the "Class Members." Specifically excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definitions as necessary.

138.    **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, given the wide

---

[49] Plaintiffs seek to certify a Multi-State Consumer Protection Class consisting of persons in the following states (and implicating the following statutes): California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*).

distribution of the Tampon Products, it is voluminous and nationwide. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized retailers.

139.    **Typicality**: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Tampon Products containing PFAS that were designed, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for the Tampon Products containing chemicals which makes the Tampon Products not what reasonable consumers were intending to purchase. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

140.    **Commonality**: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)    Whether Defendant misrepresented that the Tampon Product is free from harmful ingredients;

(b)    Whether Defendant's practices in marketing, advertising and packaging the Tampon Products tend to mislead reasonable consumers into believing that the Tampon Products are free from harmful chemicals, such as PFAS;

(c)    Whether Defendant engaged in false or misleading advertising;

(d)    Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Tampon Products with the Safe, Gentle and Purified Representations and other misrepresentations and omissions as described herein;

(e)    Whether Defendant violated Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAL);

(f)    Whether Defendant violated Civil Code §§ 1750, *et seq.* (CLRA);

(g)    Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL);

(h)  Whether Defendant engaged in deceptive trade practices by selling, packaging, advertising and/or marketing the Tampon Products containing PFAS chemicals;

(i)  Whether Defendant engaged in false or misleading advertising by selling, packaging, and/or marketing the Tampon Products containing PFAS chemicals;

(j)  Whether Plaintiffs and Class Members either paid a premium for the Tampon Products that they would not have paid but for Defendant's false representations or would not have purchased them at all;

(k)  Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(l)  Whether Plaintiffs and Class Members have suffered an economic injury and the proper measure of their losses as a result of those injuries; and

(m)  Whether Plaintiffs and Class Members are entitled to injunctive, declaratory, or other equitable relief.

141.  **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer product, misrepresentation, and mislabeling class actions, and Plaintiffs intend to prosecute this action vigorously.

142.  **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Defendant's misrepresentations and omissions and unknowingly be exposed to the risk of harm associated with the PFAS chemicals in the Tampon Products. Defendant has acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

143.  **Predominance and Superiority**: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims

prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

144.    Plaintiffs know of no difficulty to be encountered in the maintenance of this  Action that would preclude its maintenance as a class action.

145.    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**<u>COUNT ONE</u>**
**Violation of State Consumer Protection Statutes**
**(On Behalf of Plaintiffs and the Multi-State Consumer Protection Class)**

146.    Plaintiffs, individually and on behalf of the Multi-State Consumer Protection Class, repeat and re-allege all previous paragraphs as if fully included herein.

147.    Plaintiffs and Multi-State Consumer Protection Class Members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above, which also provide a basis for redress to Plaintiffs and Multi-State Consumer Protection Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

148.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

149.    Defendant violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by representing the Tampon Products using the Safe, Gentle and Purified Representations and other misrepresentations and omissions detailed herein, when, in reality,

they contain unnatural, human-made PFAS chemicals known to be harmful to humans and the environment.

150. Defendant's misrepresentations were material to Plaintiffs' and Multi-State Consumer Protection Class Members' decision to purchase the Tampon Products or pay a premium for the Tampon Products.

151. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

152. As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class Members purchased and paid for Tampon Products that did not conform to Defendant's Tampon Product promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent money on Tampon Products that did not have any value or had less value than warranted or Tampon Products that they would not have purchased and used had they known the true facts about them

153. As a result of Defendant's violations, Defendant has been unjustly enriched.

154. Pursuant to the aforementioned States' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT TWO**
**Violation of the California Consumer Legal Remedies Act**
**("CLRA"), Civil Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiffs and the California Class)**

155. Plaintiffs, individually and on behalf of the California Class, repeat and re-allege all previous paragraphs as if fully included herein.

156. The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

157.    The CLRA applies to all claims of all California Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

158.    Plaintiffs and California Class Members are "consumers" as defined by Civil Code § 1761(d).

159.    Defendant is a "person" as defined by Civil Code § 1761(c).

160.    The Tampon Products qualify as "goods" as defined by Civil Code § 1761(a).

161.    Plaintiffs' and the California Class Members' purchases of Tampon Products are "transactions" as defined by Civil Code § 1761(e).

162.    As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

   a.  "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);

   b.  "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

   c.  "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

   d.  "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Civil Code § 1770(a)(16).

163.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9), and (a)(16) when it represented, through its advertising and other express representations, that the Tampon Products had benefits or characteristics that they did not actually have.

164.    As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA, and has made representations regarding Tampon Products benefits or characteristics that they did not in fact have, and represented the Tampon Products to be

1    of a quality that was not true. Indeed, Defendant concealed this information from Plaintiffs and

2    California Class Members.

3         165.    The Tampon Products are not Safe, Gentle and Purified, and are of an inferior quality

4    and trustworthiness compared to other products in the industry. As detailed above, Defendant further

5    violated the CLRA when it falsely represented that the Tampon Products meet a certain standard or

6    quality.

7         166.    As detailed above, Defendant violated the CLRA when it advertised the Tampon

8    Products with the intent not to sell Tampon Products as advertised and knew that the Tampon Products

9    were not as represented.

10        167.    Specifically, Defendant marketed, labeled, and represented the Tampon Products with

11   the Safe, Gentle and Purified Representations, when in fact the Tampon Products contain PFAS,

12   which no reasonable consumer would believe was in products with the Safe, Gentle and Purified

13   Representations.

14        168.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and

15   California Class Members to purchase or otherwise acquire the Tampon Products.

16        169.    Defendant engaged in uniform marketing efforts to reach California Class Members,

17   their agents, and/or third parties upon whom they relied, to persuade them to purchase and use the

18   Tampon Products manufactured by Defendant. Defendant's packaging, advertising, marketing,

19   website and retailer product identification and specifications, contain numerous false and misleading

20   statements regarding the quality and safety of the Tampon Products.

21        170.    Despite these Safe, Gentle and Purified Representations, Defendant also omitted and

22   concealed information and material facts from Plaintiffs and California Class Members.

23        171.    In their purchase of Tampon Products, Plaintiffs and California Class Members relied

24   on Defendant's representations and omissions of material facts.

25        172.    These business practices are misleading and/or likely to mislead consumers and should

26   be enjoined.

27

28

173.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs Mack and Solano notified Defendant in writing by certified mail sent on February 10, 2023, of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to do so. If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiffs will amend this Complaint to seek actual, punitive, and statutory damages, as appropriate.

174.    A declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

175.    In accordance with Civil Code § 1780(a), Plaintiffs and the other California Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices.

## COUNT THREE
### Violations of the California Unfair Competition Law
### ("UCL") California Business and Professions Code §§ 17200, *et seq.*
### (On Behalf of Plaintiffs and the California Class)

176.    Plaintiffs bring this count on behalf of themselves and the California Class and repeat and re-allege all previous paragraphs as if fully included herein.

177.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

178.    Plaintiffs and Class Members who purchased Defendant's Tampon Products suffered an injury by virtue of buying products in which Defendant misrepresented and/or omitted the Tampon Products' true quality, reliability, safety, and use. Had Plaintiffs and Class Members known that Defendant materially misrepresented the Tampon Products and/or omitted material information regarding its Tampon Products, they would not have purchased the Tampon Products.

179.    Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this complaint.

180.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Tampon Products.

181. Plaintiffs and Class Members who purchased Defendant's Tampon Products had no way of reasonably knowing that the Tampon Products were deceptively packaged, marketed, advertised, and labeled, were not safe, and were unsuitable for their intended use. Thus, Plaintiffs and California Class Members could not have reasonably avoided the harm they suffered.

182. Specifically, Defendant marketed, labeled, and represented the Tampon Products with Safe, Gentle and Purified Representations, when in fact the Tampon Products contain PFAS, which no reasonable consumer would believe was in products with the Safe, Gentle and Purified Representations.

183. The gravity of the harm suffered by Plaintiffs and Class Members who purchased Defendant's Tampon Products outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Tampon Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiffs and California Class Members.

184. The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiffs and Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendant's Tampon Products, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

185. As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

**COUNT FOUR**
**Violation of the California False Advertising Law**
**("FAL") California Business and Professions Code §§ 17500, *et seq.***
**(On Behalf of Plaintiffs and the California Class)**

186.    Plaintiffs, individually and on behalf of the California Class, repeat and re-allege all previous paragraphs as if fully included herein.

187.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

188.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

189.    Specifically, Defendant marketed, labeled, and represented the Tampon Products with the Safe, Gentle and Purified Representations, when, in fact, the Tampon Products contain PFAS, which no reasonable consumer would believe was in products with the Safe, Gentle and Purified Representations.

190.    At the time of its misrepresentations, Defendant was either aware that Tampon Products contained PFAS, which no reasonable consumer would expect would be in products with the Safe, Gentle and Purified Representations or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Defendant concealed and omitted and failed to disclose this information to Plaintiffs and California Class Members.

191.    Defendant's descriptions of the Tampon Products were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

192.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

193.    Plaintiffs have standing to pursue claims under the FAL as they reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding the Tampon Products when selecting and purchasing the Tampon Products.

194.    In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and use of the Tampon Products Plaintiffs and California Class Members purchased the Tampon Products.

195.    Had Defendant disclosed the true nature of the Tampon Products (that they contain PFAS and are not Safe, Gentle, and Purified), Plaintiffs and California Class Members would not have purchased Tampon Products or would have paid substantially less for them.

196.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiffs and California Class Members who paid for the Tampon Products, which contained chemicals and were not safe.

197.    Plaintiffs and California Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant and by means of its deceptive or misleading representations, including monies already obtained from Plaintiffs and California Class Members as provided for by the California Business and Professions Code § 17500.

**COUNT FIVE**
**Unjust Enrichment/Quasi-Contract**
**(On Behalf of Plaintiffs and the Nationwide Class, or, in the Alternative, the California Class)**

198.    Plaintiffs, individually and on behalf of the Nationwide Class or, in the alternative, the California Class, repeat and re-allege all previous paragraphs as if fully included herein.

199.    Defendant's unfair and unlawful contract includes, among other things, making false and misleading representations and omissions of material fact, as set forth in this Complaint. Defendant's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and Class Members were harmed at the time of purchase, Defendant was unjustly enriched by its misrepresentations and omissions.

200.    Plaintiffs and Class Members were harmed when purchasing Defendant's Tampon Products as a result of Defendant's material representations and omissions, as described in this Complaint. Plaintiffs and each Class Member purchased the Tampon Products. Plaintiffs and Class

Members have suffered injury in fact and lost money as a result of paying the price they paid for the Tampon Products as a result of Defendant's unlawful, unfair, and fraudulent business practices.

201.　Defendant's conduct allows Defendant to knowingly realize substantial revenues from selling the Tampon Products at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

202.　Plaintiffs and Class Members confer significant financial benefits and pay substantial compensation to Defendant for the Tampon Products, which are not as Defendant represents them to be.

203.　Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

204.　Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a.　Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.　Name Plaintiffs as Class Representatives and Plaintiffs' attorneys as Class Counsel;

c.　Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Classes in an amount to be determined at trial;

d.　Grant restitution to Plaintiffs and the Classes and require Defendant to disgorge its ill-gotten gains;

e.　Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

f.　Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

CLASS ACTION COMPLAINT

g.      Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

h.      Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

DATED: February 24, 2023.                    Respectfully submitted,

                                             _/s/ Michael H. Pearson____
                                             Michael H. Pearson, CA SBN 277857
                                             **PEARSON WARSHAW, LLP**
                                             15165 Ventura Blvd., Suite 400
                                             Sherman Oaks, CA 91403
                                             Telephone: (818) 788-8300
                                             Facsimile: (818) 788-8104
                                             mpearson@pwfirm.com

                                             Melissa S. Weiner*
                                             **PEARSON WARSHAW, LLP**
                                             328 Barry Avenue S., Suite 200
                                             Wayzata, MN 55391
                                             Telephone: (612) 389-0600
                                             Facsimile: (612) 389-0610
                                             mweiner@pwfirm.com

                                             Rachel Soffin*
                                             **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                             800 S. Gay Street, Suite 1100
                                             Knoxville, TN 37929
                                             rsoffin@milberg.com

                                             Harper T. Segui*
                                             **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                             825 Lowcountry Blvd., Suite 101
                                             Mt. Pleasant, SC 29464
                                             hsegui@milberg.com

                                             Erin J. Ruben*
                                             Thomas A. Pacheco*
                                             **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                             900 W. Morgan Street
                                             Raleigh, NC 27603
                                             P.O. Box 12638
                                             Raleigh, NC 27605
                                             eruben@milberg.com
                                             tpacheco@milberg.com

CLASS ACTION COMPLAINT

*Attorneys for Plaintiffs and the Classes*

*\*Pro Hac Vice Forthcoming*

CLASS ACTION COMPLAINT